JAMES LORD *versus* JOHN COLLEY and others.

In order to maintain an action for a false recommendation of the credit of any person, it must be shown that the recommendation was fraudulent as well as false ; and the fraud is a matter of fact to be settled by the jury.

THIS was an action on the case, for falsely representing Josiah Hobbs, Junior, to be a man of credit, whereby the plaintiff was induced to trust him and lost a sum of money.

The cause was tried here, at January term, 1832, upon the general issue.

It appeared, that the defendants made and delivered to Josiah Hobbs, Junior, a certificate, in the following words.

" This may certify, that Josiah Hobbs, Junior, is competent to pay the sum of $100 within any reasonable term of time, and we hereby recommend him as possessing credit to that extent.   *Newfield, April* 10, 1829.
G. L. SMITH,
JOHN HOBBS,
JOHN COLLEY."

J. Hobbs, Jr. carried this certificate to the plaintiff, and thereby obtained goods, to the value of $104, for which he gave the plaintiff his note.

Evidence was introduced, on the part of the plaintiff, which tended to prove that J. Hobbs was indebted at the time the recommendation was given, and that he was destitute of credit ; but it appeared that he had a deed of a tract of land. This tract of land, however, he had conveyed to another person, for life. It was also under a mortgage, which has since become absolute. The deed to him, and the mortgage, were both recorded in the register's office.

There was evidence introduced, by the defendants, which had a tendency to prove that Hobbs had some personal property, but there was also evidence, tending to prove that it was so situated that his creditors could not safely take it.

The plaintiff had been able to collect only a small part of the note he took.

The court instructed the jury, that if the defendants made the representation alleged, when the person recommended was, in fact, destitute of credit, the plaintiff was entitled to recover, whether the defendants were, in fact, acquainted with his circumstances or not, and whether they knew that he was about to apply to the plaintiff or not, in order to obtain credit ; that having given the recommendation in direct and positive terms, they were bound, and must be presumed, to know Hobbs' circumstances, and the recommendation, not being directed to any particular person, if false, must be presumed as intended to deceive any person with whom Hobbs might deal.

The court further instructed the jury, that if the recommendation was false, the recorded deed of Hobbs had no tendency, under the circumstances, to rebut the presumption of an intent to deceive, which arose from giving such a certificate.

The jury, having found for the plaintiff, the defendants moved for a new trial, on the ground of a misdirection to the jury.

*Hobbs,* for the defendant. The foundation of this action is fraud and deceit, producing damage to the plaintiff. The fraud is not to be presumed. The plaintiff must prove that the recommendation was false and fraudulent. It must appear that the defendants knew the certificate was false. 3 D. & E. 51, *Pasley* v. *Freeman;* 1 East, 318, *Eyre* v. *Dunsford;* 2 East, 92, *Haycraft* v. *Creasy;* 3 B. & P. 367, *Tapps* v. *Lee;* 12 Mass. Rep. 20, *Bean* v. *Bean;* 3 Johns. 269, *Ward* v. *Center;* 6 Johns. 181, *Upton* v. *Vail;* 8 Johns. 23, *Young* v. *Covell;* 7 Cranch, 69, *Russell* v. *Clark's executors;* 2 Kent's Com. 385; Hammond's N. P. 327; 17 Mass. Rep. 182, *Patten* v. *Gurney;* 1 Taunton, 558, *Hutchinson* v. *Bell;* Buller's N. P. 30; 1 Greenleaf, 376, *Cross* v. *Peters.*

It was necessary for the plaintiff, then, in this case, to entitle him to a verdict, to prove that the defendants knew that Hobbs was not competent to pay $100 within a reasonable term of time, and that he did not possess credit to that extent.

The direction given to the jury was, in effect, that if the recommendation was false, in fact, the fraud, from the terms of the recommendation, must be presumed.

This is a mixed presumption of law and fact. 3 Starkie's Ev. 1243.

To authorize the court to make the presumption that the recommendation was fraudulent, from its being false, they must presume that it was made *malo animo.* For, although it might be false, it could not be fraudulent unless the defendants knew it to be false.

It is a well settled principle that without the malicious and wicked mind, in the defendant, the recommendation could not be fraudulent. This is law in this case, and in actions for slander and libel. 2 Starkie's Ev. 741.

In the case before the court, the question of intention

was not submitted to the jury. And if it had been, there was no evidence that could warrant them in finding such an intent. All suspicion of such an intent was rebutted by the fact that Hobbs had property.

There is nothing in the terms of the recommendation in this case, which raises any presumption of a fraudulent intent. Nothing more is expressed than the opinion of the defendants as to Hobbs' circumstances.

The rule, that a man shall be taken to intend the immediate consequences of his act, does not apply in this case. 2 Starkie's Ev. 739. The rule does not extend to offences where a specific and particular intention is essential. 2 Starkie's Ev. 740.

In this case there must exist a specific intention to commit a fraud, to render the defendants liable. But fraud is not to be presumed. 3 Starkie's Ev. 1248.

It will be found, on examining all the reported cases where an action has been sustained for giving a false character, that the defendant, at the time he gave the recommendation, knew it to be false. 1 Espin. N. P. C. 442, *Wood* v. *Wain*; ibid, 290, *Cowen* v. *Simpson*.

*Sullivan* and *Tebbetts*, for the plaintiff.

RICHARDSON, C. J. delivered the opinion of the court.

The question, in this case, is, whether the jury were misdirected in a matter of law.

It is well settled that an action of this kind cannot be sustained, unless the recommendation be both false and fraudulent. Recommendations are generally understood to be nothing more than the opinion of those who give them, resting upon common reputation, and the apparent circumstances of the individual recommended, and not upon any minute examination of his affairs. And it is well known that men, who are apparently in good credit, and in easy circumstances, turn out to be, in reality, insolvent. It is, therefore, very obvious that a recommendation ought not to be presumed to be fraudulent merely because it happens not to be true. The law, on

this subject, is explained in the cases cited by the counsel of the defendants, and in many other cases. 8 Taunton, 637, *Ames* v. *Melward*; 5 B. & P. 241, *Hamar* v. *Alexander*; 12 East, 631, *Vernon* v. *Keys*; 6 Taunton, 522, *Pewtris* v. *Austen*; 2 Starkie's Ev. 467; 2 Starkie's N. P. C. 561, *Fletcher* v. *Bowsker*; 6 Cowen, 346, *Gallager* v. *Brunel*; 13 Johns. 244, *Barney* v. *Dewey*; Peake's N. P. C. 226, *Scott* v. *Lara*; 7 Bingham, 105; 6 ditto, 396, *Foster* v. *Charles*.

In this case the jury were told, in substance, that if the recommendation was false it must be presumed to be fraudulent. But it is certain that a false representation is by no means necessarily a fraud in law.

If, then, the writing which was signed by the defendants in this case, is to be considered as nothing more than a common recommendation, it is clear that the question of fraud was a question of fact to be settled by a jury, and the direction given was wrong.

We have attentively considered the writing which was given by these defendants. It is not in the common form of a letter of recommendation. With respect to the competency of Hobbs to pay $100, it is a certificate. As to his credit it is a recommendation. Now a certificate is, strictly speaking, a certain assurance of that which it states. But these defendants are probably common men, who are not likely to know very accurately the precise force of the word certify. It is probable that in certifying that Hobbs was competent to pay $100, they intended nothing more than to express an opinion that he was competent. And it is probable that the certificate would, in general, be understood to express nothing more than this.

We are, on the whole, of opinion, that the jury were misdirected, and there must be a new trial, in order that it may be submitted to the jury to say whether the writing, which was signed by the defendant, was fraudulent as well as false.

*New trial granted.*