# HANSON *v.* EDGERLY.

In case, for deceit in the sale of property, the gist of the action is fraud accompanied with damage.

The mere unintentional concealment or omission, on the part of the vendor, to disclose material facts which are known to himself but not to the purchaser, and to the knowledge of which he has not equal means of access, is not sufficient to sustain an action for deceit against the vendor for the damage suffered by the vendee.

Such concealment must be accompanied with an intention to deceive, in order to be the proper foundation of an action for deceit.

CASE for deceit in the sale of a horse. The defendant pleaded the general issue.

At the trial, it was in controversy between the parties whether the sale of the horse in question was made to the

plaintiff alone, or to him and one Stephen French, or to said French alone. It appeared in evidence that a note was given to the defendant for the horse, signed by the plaintiff and said French; and the defendant introduced as a witness his son, James B. Edgerly, who testified that on the day of the sale, after the horse had been led away from the defendant's stable by said French, the witness, by direction of the defendant, went to the stable of the plaintiff, where French kept his horses, with the note prepared for signature, and delivered it to French, saying that it was the note which his father, the defendant, had sent for him to sign for the horse, and that the defendant told him, the witness, to carry it to French. To this last statement of the witness relative to what the defendant told him, the plaintiff objected, but the court admitted the testimony.

There was evidence, on the part of the plaintiff, tending to show that the horse was diseased at the time of the sale, and that the defendant knew it; and the plaintiff offered to prove that after the sale, while the horse was kept by him in his livery stable, for the purpose of being let out for hire, his customers refused to take him when they called at the stable to hire horses, on account of his diseased condition, and that others, not regular customers of the plaintiff, when informed of his condition, on applying for a horse to use, also refused to take this horse.

To this evidence the defendant objected, and the court rejected it as inadmissible.

There was evidence in the case, on the part of the defendant, tending to show that whatever symtoms or appearance of disease were observed in the animal prior to the sale, they were not of such a character as to lead the defendant to suppose that the horse was in fact diseased at the time of the sale; and one point taken in the defence was that the defendant, at the time of the sale, had no knowledge of the existence of the disease.

The court instructed the jury that the gist of the action

was that the plaintiff was imposed upon by the fraud of the defendant; that in order to entitle the plaintiff to recover he must satisfy the jury that representations of a material character were falsely made by the defendant, or facts of a material character were concealed by him, with the intent and for the purpose of imposing upon and deceiving the plaintiff, and that the plaintiff was thereby deceived; that the principal inquiry, in this part of the case, was one of good or bad faith on the part of the defendant, and that if, at the time of the sale, the horse was diseased and the defendant understood him to be so, but represented him to be otherwise, or concealed or withheld the facts of the existence of that disease from the plaintiff, with the intent and for the purpose of misleading and deceiving him, their verdict should be for the plaintiff; otherwise for the defendant.

The jury returned a verdict for the defendant, and the plaintiff, having excepted to the foregoing rulings and instructions of the court, moved that the verdict be set aside and a new trial granted.

*Christie & Kingman,* for the plaintiff.

I.   The part of Josiah B. Edgerly's testimony that was objected to was inadmissible, and, indeed, we contend the whole of his testimony was inadmissible.

It was all *res inter alios acta,* and was, therefore, not admissible to modify or explain any thing that had taken place between the plaintiff and defendant.

Nor could it have any legitimate tendency to show with whom the contract for the sale of the mare was in fact made, as against the plaintiff, he not knowing or being party to any fact stated by this witness.

The defendant cannot be allowed thus to make evidence for himself out of his own acts and orders, done and given in the absence of the plaintiff, and never communicated to him.   *Gordon* v. *Shurtliff,* 8 N. H. Rep. 260.

If the evidence was inadmissible, the verdict must be set aside, as it was clearly prejudicial to the plaintiff.

II. The evidence offered by the plaintiff to show that his customers and others, when informed of the mare's disease, would not hire or use her, has a direct tendency to show the worthlessness of the animal to the plaintiff, and the extent of the injury he had sustained by the disease of the mare, and, we think, should have been admitted for these purposes.

III. The court's instruction to the jury in relation to the alleged concealments of the latent disease of the animal, by the defendant, was erroneous. It makes two things requisite to charge the defendant, namely, the fact of the concealment and a purpose to deceive.

We submit that such concealment or withholding of the fact of the existence of such disease, is alone sufficient to charge the defendant.

The *quo animo* or intent with which the defendant concealed or withheld that fact from the plaintiff, could have no tendency to influence the plaintiff to enter into the contract, nor any effect to enhance or diminish the injury to the plaintiff. He was alike deceived and injured, whether the defendant knew that he was legally and morally bound to disclose the fact of the existence of the said disease, and with a design to deceive and injure the plaintiff, forebore to disclose the fact, or whether he did not know that he was legally or morally bound to disclose such fact, and, therefore, without any design to injure or deceive the plaintiff, and believing that he had a perfect legal and moral right so to do, forebore to disclose such fact.

The defendant's civil liabilities, in such case, must depend upon his feasances or nonfeasances, and not upon his secret purposes, or his understanding or opinion as to his legal or moral duty in the premises.

It is not necessary, in cases of this description, to prove fraud in fact, or moral fraud, but fraud in law is sufficient;

and this the law infers from the fact of the concealment of, or neglect to disclose the fact of the existence of a latent material defect, known to the vendor and not to the vendee.

Thus it seems to us in reason.    Fraud generally consists, first, in the misrepresentation, or, second, in the concealment of a material fact; Chitty on Contracts (last ed.) 681 ; (old ed.) 223 ; more clearly when such fact is peculiarly within his own knowledge in consequence of which a delusion exists.    *Ib.*

A seller who does not disclose to the purchaser a latent defect in the article sold, which is known to the seller, is liable to an action of deceit, although he expressly refused to warrant the soundness of the article.    *Hough* v. *Evans,* 4 McCord 169 ; 2 U. S. Dig. p. 26, § 31.

In the case of *Adams* v. *Page & a.,* 7 Pick. 542, *Shaw,* C. J., says " it is not necessary, to maintain an action on the case, that there should be moral turpitude in the act complained of.    It lies wherever damage is occasioned by a wrong done.    It is in the nature of a bill in equity."

It is objected that this action would not lie without proving a real fraudulent intent.    We see no necessity of proving any wicked or corrupt purpose.

A vendor is liable, if he knows of a defect in the article sold, which is unknown to the vendee, and does not disclose it.    *Mc Garock* v. *Ward,* Cooke 403, 3 U. S. Dig. 370, § 273.

A sale of an unsound negro, known to be so by the seller, and concealed from the purchaser, was held fraudulent, and the purchase money was recovered back.    *Duvall* v. *Medtart,* 4 Har. & J. 14, 3 U. S. Dig. 379, § 523.

In none of the cases is the wrongful intent of the vendor made a requisite to the maintenance of the action.    In *Collins* v. *Dennison,* the contrary seems to have been held.

*J. H. Wiggins,* for the defendant.

In this action, whatever representations were made by the defendant, to induce the plaintiff to buy the horse, and as to the soundness of the animal, must be confined to the time when the sale took place. The rule that warranty only applies to things *in esse,* at the time the warranty was made, and not to things *in futuro,* is a most sound and judicious rule of law, and applies to the offer of the plaintiff to show that his customers refused to take the horse on account of his unsoundness; for, in fact, it amounts only to proving that the horse was unsound after the defendant had parted with him, and long after he had become the property of the plaintiff.

This the plaintiff cannot do; its injustice to the defendant is too obvious. So far as the question of soundness is concerned, it is confined to the time of the sale; and evidence of the condition of the animal after the sale can only be admissible as tending to show his condition at the time of the sale. The evidence offered by the plaintiff can have no such tendency, nor could it have any bearing upon the question of fraud and deceit. It is an offer to put in the doings and declarations between the plaintiff and third persons, and what other third persons said and did upon receiving information from the plaintiff or some one else.

Nor can it be admissible upon the question of damages; if it were, it would be too easy for unprincipled plaintiffs to manufacture a good case, to order, at their stables, and thus impose upon courts, and do great wrong to innocent defendants. This damage does not result immediately from the deceit or breach of warranty of the plaintiff, but is very remote and exceedingly uncertain.

There is no special damage set out in the writ, and in the general form in which this action is brought, the rule of damages is too well settled to need any references.

Besides, in any view which the plaintiff can possibly take of this part of his case, the rejection of the evidence did him

no harm. The verdict of the jury, under the instructions of the court, was for the defendant. Now if these instructions were correct, the evidence was immaterial; because the jury must have found that, in fact, the horse was sound at the time of the sale, or that if he was not sound, that the defendant did not know it, and, of course, did not impose upon the plaintiff by any false and fraudulent representations.

Were the instructions of the court correct? We think they were, beyond any doubt. The language of the court is the language of the books upon what is the gist of this action.

Deceit dies wherever a person has, by a false affirmation or otherwise, imposed upon another, to his damage. 2 Stephens' N. P. 1280.

The gist of the action of deceit consists of falsehood, and an intention to deceive or defraud. 2 East 92.

It must appear that the lie was told for the purpose of imposing on the plaintiff. Peake's Cases 226.

In an action for deceit, the deceit is the *gravamen,* and the *scienter* the gist of the action. 2 Stephens' N. P. 1281.

Fraud in the defendant and damage to the plaintiff are the gist of the action. *Tryon v. Whitmarsh,* 1 Met. 1.

The plaintiff must, in the first place, prove fraud in fact; he must show that the representation was not only falsely, but that it was fraudulently made, with intent to deceive the plaintiff; for the fraud or deceit is the foundation of the action. The plaintiff must prove not only the falsity of the representations, but also the *scienter,* the knowledge of the defect, on the part of the defendant. 2 Stephens' N. P. 1285.

As to the statement of the defendant's son, at the time he carried the note to French for the horse, the case finds that it was made a question at the trial whether the sale was made to the plaintiff alone, or to the plaintiff and one French. The witness saw the delivery of the horse on the day of the sale, to French, and on the same day he went, by

direction of his father, with a note for French to sign. Now if the act was admissible, the statement of the witness is, because the statement is part of the *res gestæ*, it is a part of the act itself; it accompanies the delivery of the note to French, and it should appear in the case that French took the note without comment or objection, and signed it, and the witness carried it back to his father, the defendant.

The agreement to give the note was part of the sale; and what was said and done at the time the note was given, has a direct bearing upon the question as to whom was the sale made.

But if it is not to be taken that the execution of the note following so close upon the delivery of the horse to French is a fact of such a character as to warrant the admission of the statement of the witness at the time the note was presented to French for signing, by direction of his father, it seems to be clear, under the instructions of the court, that the plaintiff has received no detriment. For if the jury had found the gist of the action fraud in the defendant, whether the sale had been jointly to the plaintiff and French, or to either alone, in either case the plaintiff would have been entitled to recover, if jointly, one half, if alone, the whole damage. But the jury, upon the main question, found the defendant not guilty, and of what possible consequence could it have been whether the testimony excepted to was admitted or rejected?

Woods, J. The principal question for decision grows out of the instructions to the jury. They were instructed, in effect, that if at the time of the sale the horse was diseased, and the defendant knew him to be so, but represented him to be otherwise, or concealed or withheld the facts of the existence of the disease from the plaintiff, with the intent and for the purpose of misleading and deceiving him, their verdict should be for the plaintiff; otherwise for the defendant. This portion of the instructions contains the mat-

ter of which complaint is made. The precise ground of exception is that the instructions rendered it necessary that the concealment should have been accompanied with the intent thereby to deceive the plaintiff.

It is insisted, on the part of the plaintiff, that it is enough to warrant a recovery, in a case like the present, that it should be shown that the defendant knew of the existence of the disease, and concealed or withheld and did not disclose the fact to the plaintiff, even if the concealment were unaccompanied by any such purpose to deceive.

It will be our purpose to discover and apply the true principle applicable to the case. The precise question, in this case, has never been settled in this State, so far as we know, or can learn from an examination of our reports. It is remarked, in the opinion of the court, in *Stevens* v. *Fuller*, 8 N. H. Rep. 463, by Mr. Justice *Green*, as follows : " Perhaps the action might have been sustained, even if the defendant had not represented the mare to be worth $100. There are authorities to show that if there be intentional concealment or suppression of material facts in the making of a contract of sale, in cases in which both parties have not equal access to the means of information, the vendor is liable." According to this suggestion, the concealment or suppression must be accompanied with an intention, on the part of the seller, to conceal or suppress. There must be something more than mere omission to disclose the facts concealed. Such omission might be by mere accident. Such a state of things is possible, but not very probable.

Chancellor *Kent* states the doctrine thus : " If there be an intentional concealment or suppression of material facts in the making of a contract, in cases in which both parties have not equal access to the means of information, it will be deemed unfair dealing, and will vitiate and avoid the contract." " As a general rule, (says he,) each party is bound in every case to communicate to the other his knowledge of material facts, provided he knows the other to be

ignorant of them, and they be not open and naked, or equally within the reach of his observation." 2 Kent's Com. 482. In a note, (a,) to be found on the same page, it is said that " the rule here laid down, though one undoubtedly of moral obligation, is, perhaps, too broadly stated to be sustained by the practical doctrine of the courts. The qualification of the rule is that the party in possession of the facts must be under some special obligation, by confidence reposed or otherwise, to communicate them truly and fairly."

Kent further says, 2 Kent's Com. 483, (4th Ed.) " the writers of the moral law hold it to be the duty of the seller to disclose the defects which are within his knowledge. But the common law is not quite so strict. If the defects in the article sold be open equally to the observation of both parties, the law does not require the vendor to aid and assist the observation of the vendee. Even a warranty will not cover defects that are plainly the objects of the senses; though if the vendor says or does anything with an intention to divert the eye, or obscure the observation of the buyer, even in relation to open defects, he would be guilty of an act of fraud. Each one, in ordinary cases, judges for himself, and relies confidently, and perhaps presumptuously, upon the sufficiency of his own knowledge, skill and diligence. The common law affords to any one, reasonable protection against fraud in dealing, but it does not go the romantic length of giving indemnity against the consequences of indolence or folly, or a careless indifference to the ordinary and available means of information. It reconciles the claims of convenience with the duties of good faith to every extent compatible with the interests of commerce. This it does by requiring the purchaser to apply his attention to those particulars which may be supposed within the reach of his observation and judgment; and the vendor to communicate those particulars and defects which cannot be supposed to be immediately within the reach of such attention." At page 490, Kent says, " Pothier, after contending

that good faith and justice require that neither party to a contract should conceal facts within his own knowledge, concludes, ' in conformity with the doctrine of Lord *Thurlow*, that though misrepresentation or fraud will invalidate the contract of sale, the mere concealment of material knowledge which the one party has, touching the things sold, and which the other does not possess, may affect the conscience, but will not destroy the contract, for that would unduly restrict the freedom of commerce ; and parties must, at their own risk, inform themselves of the value of the commodities they deal in.' "

In *Mellish* v. *Motteaux*, Peake's N. P. Cases, 115, where a ship was sold, " with all faults," having a latent defect known to the seller, and which the buyer could not by any attention possibly discover, the seller was held, (Lord *Kenyon* delivering the opinion,) to be bound to disclose it, and the concealment was held to be a breach of honesty and good faith.

The doctrine of that case was afterwards overruled by Lord *Ellenborough*, and it was held that a seller of a ship " with all faults " was not liable for latent defects, unless he had used some artifice to conceal them from the buyer. *Baglehole* v. *Walters*, 3 Campb. 154.

In *Schneider* v. *Heath*, 3 Campb. 506, it was held that, " although a ship be sold, ' to be taken with all faults,' the vendor cannot avail himself of that stipulation, if he knew of secret defects in her, and used means to prevent the purchaser from discovering them, or made fraudulent representations of her condition at the time of the sale."

*Pickering* v. *Dawson*, 4 Taunt. 779, confirms the doctrine of *Baglehole* v. *Walters*, before cited. *Heath*, J., in this case, which was case for deceit in the sale of a ship with all faults, remarked, " I admit the vendor is not to make use of any fraud or practice to conceal faults." *Gibbs*, J., in delivering his opinion in *Pickering* v. *Dawson*, referred to the case of *Baglehole* v. *Walters*, and remarked, that " the

ground on which that case ultimately went was that the one party covered the defects so that the other could not see them." And moreover, he remarked thus, " I remember the case of the sale of a house, in South Audley Square, where the seller being conscious of a defect in a main wall, plastered it up and papered it over ; and it was held that, as the vendor had expressly concealed it, the purchaser might recover."

M. Chitty says : " Fraud is of various kinds, but it generally consists either in the misrepresentation or the concealment of a material fact. It is extremely difficult to advance any general principle or elementary doctrine upon this subject." Chit. on Con. 681.

In *McDonald* v. *Trafton*, 3 Shep. 225, where the defence set up to a recovery upon the note was the alleged false and fraudulent representations of the payee in regard to the lot of land in the bond, a transfer of which constituted the consideration of the note, *Shepley*, J., remarked, " There is no evidence tending to prove that the payee knew that his representations were not true. And the counsel for the defendant contend that such proof is not necessary to avoid the note. Fraud in such cases consists in an intention to deceive. Where the evidence does not prove that the party making the representation knew it to be untrue, the fraud can be established only by proof of a design to deceive by making statements of which the party knows nothing, and that the other was thereby deceived and injured. And such design must be proved by other evidence than the mere fact that the representation was not true."

*Tryon & a.* v. *Whitmarsh*, 1 Met. 1, was case for deceit, consisting in the false and fraudulent representation of the credit of certain persons, by which the plaintiffs were deceived and suffered damage. *Wilde*, J., says, " the gist of the action is fraud and deceit in the defendant, and damage to the plaintiffs." And after citing several authorities, further remarks, " we are therefore of the opinion that the

question for the jury was, whether the defendant knew that the assertion or opinion contained in his letter was false, or that he did not fully believe it to be true; or whether he did not conceal a material fact from the knowledge of the plaintiffs, with the intention to deceive them. It is true, as the defendant's counsel have argued, that the defendant was not bound to disclose the facts on which his opinions were founded; but if he kept back any material fact, with the intent to deceive the plaintiffs, it would be fraudulent. Perhaps it is not material in which form the question is to be left to the jury, whether the defendant were guilty of a fraudulent concealment, or of making a false affirmation, knowing it to be false. The question is whether the defendant gave an honest opinion, or was actuated by some fraudulent, intention." In such a case as that, it would seem that the possession of a knowledge of all the facts which would go to lay the foundation of an opinion relative to the title of a party to trust and credit, where it turns out, in fact, that no such title existed, is not sufficient to charge a party with a fraud in making the representation. The knowledge and representation must be accompanied with the intention of misleading and deceiving the party.

In *Adams* v. *Page*, 7 Pick. 542, which was an action on the case for a conspiracy to defeat the plaintiffs from obtaining a debt due to them, it was said by *Parker*, C. J., that " it is not necessary to maintain an action on the case, that there should be any moral turpitude in the act complained of. It lies whenever a damage is occasioned by a wrong done. It is founded upon the mere justice of the case, and is in the nature of a bill in equity." *Bird* v. *Randall*, 3 Bur. 1353, maintains a similar doctrine. Sir William Blackstone says that " the action of trespass on the case is a universal remedy given for all personal wrongs and injuries without force." 3 Bl. Com. 122.

In *Adams* v. *Page*, before cited, it is further remarked that " it is enough that they (the defendants) associated together,

and aided each other to do an unlawful act, prejudicial to the plaintiffs, so that in regard to the law of debtor and creditor it is fraudulent."

*Page & a.* v. *Bent & a.*, 2 Met. 371, very clearly illustrates the principle and character of the misrepresentation which will be deemed fraudulent, and support an action on the case for damages, or defeat a contract induced by it. In that case, which was assumpsit to recover a sum claimed to be due upon a note of hand, a release was relied upon as the defence, given upon consideration of an assignment, and the plaintiffs sought to avoid the effect of the release by showing that it was procured by false and fraudulent representations on the part of the defendants as to their assets, &c.

In delivering the judgment of the court, *Shaw*, C. J., after stating the facts, said, among other things, " The question then is, whether in fact there was a fraudulent intent and purpose to deceive, and whether the party was misled or induced to forego further inquiry by the representation. The principle is well settled that if a person make a representation of a fact, as of his own knowledge, in relation to a subject matter susceptible of knowledge, and such representation is not true, if the party to whom it is made relies and acts upon it as true, and sustains damage by it, it is a fraud and deceit for which the party making it is responsible. Nor is it necessary, in such a case, to prove that the party making it had any interest of his own to subserve by it. The act is wrong and injurious, and the conclusion of law is that it was done *malo animo.* But in a matter of opinion, judgment and estimate, if one states a thing as of his own knowledge, if he in fact believes it, and it is not intended to deceive, it is not a fraud, although the matter thus stated is not in fact true; for what is thus stated as knowledge must be considered and understood as an expression of strong belief only." (See, also, *Foster* v. *Charles,* 6 Bing. 396; *Polhill* v. *Walter,* 3 Barn. & Adolph. 114; *Hazard* v. *Irwin,* 18 Pick. 95.)

" Such being the rule of law in regard to the effect of fraudulent representations," says the Chief Justice, " the question is, whether the jury were rightly instructed in point of law."   " The jury were instructed, that to avoid the release, the burden of proof was upon the plaintiffs ; that if an intentional misrepresentation of their affairs had been made by the defendants, the release thereby procured would be void; but if such representation was not made designedly, it would not have that effect.   This instruction, we think, was sufficiently favorable to the plaintiffs."

*Lord* v. *Colley & a.*, 6 N. H. Rep. 99, was case for falsely representing J. Hobbs, jr., to be a man of credit, whereby the plaintiff was induced to trust him, and lost a sum of money.   At the trial, the court instructed the jury, in substance, that if the defendants made the representation alleged, it being given in direct terms, when the person recommended was in fact destitute of credit, the plaintiff was entitled to recover; they must be presumed to know Hobb's circumstances, and the recommendation not being directed to any one in particular, must, if false, be presumed as intended to deceive any person with whom Hobbs might deal.

*Richardson,* C. J., delivered the opinion of the court.   He said, " It is well settled that an action of this kind cannot be sustained unless the recommendation is both false and fraudulent."

The jury were told, in substance, that if a recommendation were false, it must be presumed to be fraudulent.   But it is certain that a false recommendation is by no means necessarily a fraud in law.

A new trial was ordered in that case, in order that it might be submitted to the jury whether the writing signed by the defendants was *fraudulent, as well as false.*

In the action for a deceit, the gist of the action is fraud, accompanied with damage.   And misrepresentation, without design, is laid down as not constituting a sufficient foundation for an action.   Such is the case where a party

falsely recommends the credit of a person, but makes the misrepresentation in good faith. If such misrepresentation be made with knowledge of its falsity, it is regarded as made with design, and, of course, the party making it thus, must be regarded as designing to deceive and mislead.

So the case of a mere omission to state material facts to a purchaser, which are unknown to him, may be unattended with fraud. It might be accidental. But if the facts are known to the vendor, and there is an intentional concealment or suppression of them in making a contract, such concealment must be understood as intended for no other purpose than to deceive and mislead the vendee; and where, in such case, the vendee has not equal means of information, he must be regarded as deceived and defrauded.

If the jury had been told that if the concealment were intentional, the fraud would be made out, and the action sustained, the instructions would have met the views of the plaintiff's counsel, as the same are understood by the written argument furnished.

Now the instructions of the court were that if the fact of the existence of the disease was concealed from the plaintiff, with the intent and for the purpose of misleading and deceiving him, their verdict should be for the plaintiff, otherwise for the defendant. It seems to us that this was simply telling the jury that the concealment must be intentional in order to be fraudalent. And, certainly, such an instruction as that would be sufficiently favorable to the plaintiff. And the fact whether it was fraudulent, or with intention to deceive and mislead, must be determined by the jury. Taking the doctrine which we find laid down in 2 Kent's Com. 482, (4th Ed.) with the limitations and qualifications stated in the subsequent pages, before cited, to be correct, and we think it in accordance with nearly the whole current of the authorities, we are of the opinion that the instructions were correct. The facts concealed, of which complaint is made, were not known to the plaintiff, but

Hanson *v.* Edgerly.

were to the defendant. It is shown that the defendant well knew them, while the same is not pretended as to the plaintiff; nor can he be supposed to have had equal means of access to the knowledge of them. In such a case, it is going far enough to hold that an omission to disclose them, with the design of deceiving the party, or an intentional concealment, by which he is deceived and injured, will render the party responsible. It would be going quite too far to say that a simple unintentional concealment or omission to disclose them would render the party liable for the damage sustained.

This conclusion renders the decision of the other questions raised in the case unnecessary. There must, therefore, be judgment rendered on the verdict.

*Judgment on the verdict.*