### TOWN OF HOOKSETT SCHOOL DISTRICT

v.

### W.R. GRACE AND COMPANY.

No. C 83–761–L.

United States District Court,
D. New Hampshire.

Nov. 30, 1984.

Michael P. Hall, Brown & Nixon, P.A., Manchester, N.H., Edward J. Westbrook, Flatt & Fales, Charleston, S.C., Daniel A. Speights, Hampton, S.C., for plaintiff.

Rodney L. Stark, Stark & Peltonen, Manchester, N.H., Robert E.K. Morrill, Hall, Morse, Gallagher & Anderson, Concord, N.H., for defendant.

## ORDER ON MOTION TO DISMISS

LOUGHLIN, District Judge.

This diversity action is brought by the Town of Hooksett School District against W.R. Grace and Company, a foreign corporation, which sold and installed asbestos products in one of the Plaintiff's schools. Plaintiff seeks a judgment of one hundred and fifty thousand dollars ($150,000.00) alleging harm to its physical property and breach of warranty arising from the sale and installation of unreasonably dangerous asbestos products by the Defendant in

1958. Furthermore, Plaintiff seeks an award of one million dollars ($1,000,000.00) in punitive and exemplary damages.

In 1981, the United States Justice Department published "The Attorney General's Asbestos Liability Report to the Congress", which, the Plaintiff claims, alerted it to the unreasonable danger posed by the acoustical and fireproofing materials such as those purchased from and installed by W.R. Grace and Company. The report suggested that the asbestos industry knew of the dangers associated with asbestos since the 1930's and that suit might be brought against manufacturers by those who purchased the asbestos products.

Plaintiff claims that asbestos fibers, like those in Defendant's products, have been demonstrated to cause lung cancer and other serious diseases. According to the Plaintiff, the asbestos products in the school released and threatened to release asbestos fibers contaminating its air, walls, floors, carpeting and upholstery as well as students and school personnel. To alleviate the harm, the Plaintiff had to remove and replace the asbestos insulation and replace all the contaminated property. Defendant has advanced several reasons why the complaint should be dismissed. The court turns now to examine each of the Defendant's arguments.

First, the Defendant has moved that this action be dismissed because the Plaintiff failed to comply with the applicable statutes of limitation. RSA 508:4–I requires that personal actions be brought within six years of the date of accrual. RSA 382–A:2–725(1) requires that actions for breach of contract be filed within four years from the date of accrual. At first glance it would appear that Plaintiff's suit is barred under either statute as suit was not filed until twenty-three years after the allegedly dangerous product was installed in the Plaintiff's school. However, New Hampshire law instructs otherwise.

■ In New Hampshire, the usually absolute bar of the statute of limitations is barred in two instances. First, the limitations period will not begin to run against the Plaintiff until such time as he discovers, or in the excercise of reasonable diligence should have discovered, that he has been injured by the Defendant's acts or omissions. *EIMCO–BSP Services Company v. Davison Construction Company*, 547 F.Supp. 57, 59 (D.N.H.1982). Secondly, the limitations period will be tolled whenever the Defendant has fraudulently concealed from the Plaintiff the very fact that he has a cause of action. *Id.*

■ The parties do not dispute that the installation of the asbestos products took place in 1958 and that suit was not filed until December 14, 1983—twenty-five years later. The Plaintiff claims that it could not reasonably have been expected to know of the harm done to his property before 1981. Plaintiff explains that it was unaware of its injuries because the Defendant fraudulently concealed the hazards associated with asbestos. It was not until the publication of the Justice Department Report that the Plaintiff had sufficient information to appreciate the risks associated with asbestos. In stark contrast, Plaintiff claims that the Defendant had this information since the 1930's and that it failed to pass the information along to the Plaintiff and other consumers but instead made false representations concerning the adaptability of asbestos to the school environment. Suffice it to say, Plaintiff's allegations are sufficient to toll the limitations period under both the "discovery rule" and the doctrine of fraudulent concealment.

In Counts I and II of its complaint, Plaintiff asserts claims of negligence and strict liability against the Defendant. The Defendant moves to dismiss both counts on the grounds that Plaintiff's injuries are purely economic—i.e., removal costs—and hence are not recoverable in tort. The court turns now to consider the merits of this claim.

The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement for relief. * * * The motion is available to test a claim for relief in any pleading.... * * * The

Rule 12(b)(6) motion addressed itself solely to the failure of the complaint to state a claim and is not designed to correct inartistic pleadings or to force complaince with the requirements of Rule 10 as to the form of the pleadings.

Wright & Miller, Federal Practice and Procedure: Civil § 1356. The court's review under Rule 12(b)(6) is of a limited scope. The court will not dismiss the complaint unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the purposes of ruling on a motion to dismiss the court accepts the non-moving party's version of the facts and interprets them in the light most favorable to the same. *Id.*

■ In essence, the success of Defendant's motion to dismiss Counts I and II requires that Plaintiff's injuries be characterized as purely economic. As the body of law in the field of strict liability has developed, the jurisdictions have split on the question of whether economic loss is recoverable in strict liability. One school of thought, represented by the seminal *Santor v. A & M Karagheusian, Inc.* decision, hold that one may maintain a strict liability action for pure economic loss even where no personal injury or property damage results. 44 N.J. 52, 207 A.2d 305 (1965). In contrast, *Seeley v. White Motor Company* holds that in actions for strict liability or negligence a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In New Hampshire, the latter view prevails; "the doctrine of strict liability does not apply beyond the area of physical harm caused to the user or his property." *Hydraform Products Corp. v. Lynn Products Co.*, No. C79–221–L, slip op. at 4 (D.N.H. July 15, 1980). Hence, if Plaintiff seeks recovery for a purely economic loss, its claims must fail. Our inquiry at this point turns to characterizing the nature of the Plaintiff's injury.

"Economic loss" has been defined as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1170 (3d Cir. 1981) *quoting* Comment, *Manufacturer's Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U.Pa.L.Rev. 539, 541 (1966). "This does not mean, however, that every prayer for relief that seeks the costs of repairing a damaged product entails the type of economic loss traditionally encompassed within warranty law." *Pennsylvania Glass Sand v. Caterpillar Tractor Co., supra* at 1170.

Dean Prosser has emphatically noted the distinction between economic loss and physical injury:

> There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only physical injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes.... But where there is no physical damage, and the only loss a pecuniary one, through the loss of the value of use of the thing sold, courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence.

*Id.*, at 1170, n. 15, *quoting* W. Prosser, Law of Torts § 101, at 665 4th ed. (1971) (footnotes omitted) (emphasis added).

■ In the case at bar, the Plaintiff alleges that asbestos fibers contained in the Defendant's product were released into the school's atmosphere thus contaminating the air, the carpeting, the curtains, other school furnishings, personnel and occupants. Alerted to the unreasonably dangerous propensities of the asbestos, the Plaintiff claims it had no choice but to take immediate action to remove and replace all that which had been contaminated by the airborne fibers.

The asbestos was but a single ingredient of the acoustical insulation and fireproofing spray applied at the school. Yet, it managed to contaminate the remainder of the insulator, the curtain, walls and carpets of the school among other things. Such contamination constitutes a physical injury to Plaintiff's premises; where a defect in Defendant's product—i.e., the asbestos—creates a cognizable safety hazard, the resulting injury to property is as actionable in strict liability and negligence as personal injury resulting from the defect would be; Prosser, *The Assault on the Citadel*, 69 Yale L.J. 1099, 1143 (1960); Restatement (Second) of Torts § 402 A (imposing liability on manufacturer for physical injury inflicted upon the consumer *or* his property). That the measure of the Plaintiff's damages is economic does not transform the nature of his injury into a strictly economic loss. The gist of Plaintiff's strict liability and negligence counts is "not that the Plaintiff failed to receive the quality of product he expected, but that the Plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or his property". *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1170 (3rd Cir.1981). As such, Counts I and II are properly actionable in tort. *Id.* Accordingly, Defendant's motion to dismiss both counts is denied.

Next, Defendant moves to dismiss Counts III and IV of the complaint. Counts III and IV of the complaint seek redress for breach of express and implied warranties. In addition to the usual warranties of merchantability and fitness for ordinary purposes, Plaintiff alleges Defendant made specific express warranties to the Plaintiff and others through the advertising media. These advertisements, we are told, extolled the virtues of asbestos, its safety and its particular suitability for use in school facilities. Finally, Plaintiff alleges that Defendant knew the purposes for which Plaintiff sought the product and further knew that Plaintiff was relying on Defendant's expertise to choose a suitable product, succinctly, Plaintiff's last warranty claim is one of breach of warranty of fitness for a particular purpose. Defendant opposes the warranty counts on the grounds that Plaintiff's claims are barred by the statute of limitations and that Plaintiff is barred by its failure to give Defendant the requisite notice which is a precondition to any breach of warranty action under the Uniform Commercial Code.

Defendant's first argument lacks merit. As already noted, New Hampshire's statutes of limitations subsume a "discovery rule" which provides that the statute will not begin to run until such time as the Plaintiff knew or, in the exercise of reasonable diligence, should have known that it had a cause of action against the Defendant. Moreover, the statute of limitations will be tolled where Plaintiff demonstrates that Defendant fraudulently concealed the very existence of Plaintiff's cause of action. Suffice it to say, in light of the facts as pled, either of the aforementioned theories is available to the Plaintiff to defeat Defendant's claim.

Defendant's second argument requires a familiarity with New Hampshire's Commercial Codes, as codified RSA 382–A. The Code, in pertinent part, provides that:

(3) where a tender has been accepted

(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy. . . .

RSA 382–A: 2–607. Three policy considerations underlie the requirement of notice before filing a breach of warranty action.

The first and most important reason for requiring notice is to enable the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer.

\* \* \* \* \* \*

The second policy behind the notice requirement is to afford the seller an

opportunity to arm himself for negotiation and litigation.

\*    \*    \*    \*    \*    \*

A final and less important policy behind the notice requirement is to give the Defendant that same kind of mind balm he gets from the statute of limitations. There is some value in allowing a seller, at some point, to close his books on goods sold in the past and to pass on to other things.

J. White & R. Summers, Uniform Commercial Code § 11–9, p. 344 (2d ed. 1972). "[T]he rule requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." RSA 382–A: 2–607, Uniform Laws Comment 4 (1961).

■ There is some authority for the proposition that the defense of notice will not bar an action on an implied warranty. *See Wights v. Staff Jennings, Inc.* 241 Or. 301, 405 P.2d 624 (1965). However, that does not appear to be the case in New Hampshire. In *Elliott v. Lachance*, the New Hampshire Supreme Court held that the implied warranties of merchantability and fitness for a particular purpose "are subject to the Uniform Commercial Code provisions as to notice (RSA 382–A: 2–607, 3(a) ), disclaimer (Id., s. 2–316) and to whatever requirement of privity is imposed by Id., s. 2–318." 109 N.H. 481, 484, 256 A.2d 153 (1969).

■ In the instant case, Defendant claims that the Plaintiff never gave notice of its breach of warranty claims prior to filing suit and that the Plaintiff's failure to give the notice required by RSA 382–A: 2–607(3)(a) bars the warranty counts of this suit. Plaintiff appears to concede the argument; it does not allege that it ever gave notice prior to filing this suit, nor does it contest Defendant's legal argument on the effect of failing to give prior notice of a breach of warranty claim. In any event, absent even an allegation of compliance with the Code's warranty notice provisions, Plaintiff's claim—on that premise—must fail.

Defendant next moves to dismiss Count V of the complaint for its purported failure to state a claim upon which relief can be granted. In that Count, Plaintiff presents allegations that the Defendant made fraudulent misrepresentations and fraudulently concealed certain facts in the course of its transactions with the Plaintiff which resulted in the sale of the asbestos products in question. As a result, Plaintiff claims to have suffered damages in the amount of $1,500,000.00.

To establish fraud, the Plaintiff must prove the Defendant made a fraudulent representation for the purpose or with the intention of causing the Plaintiff to act upon it. *Hall v. Insurance Co.*, 91 N.H. 6, 10, 13 A.2d 157, 160 (1940). While the Plaintiff need not establish fraud in his pleadings, in order to withstand a motion to dismiss the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the Defendant's fraudulent actions. *Jarvis v. Prudential Insurance Co.*, 122 N.H. [648] at 653, 448 A.2d [407] at 410 [1982]. It is not sufficient for the Plaintiff merely to allege fraud in general terms. *Belisle v. Belisle*, 88 N.H. 459, 461 191 A. 273, 274 (1937)

*Proctor v. Bank of New Hampshire*, 123 N.H. 395, 399, 464 A.2d 263 (1983).

Plaintiff's complaint provides the essential elements of a fraud. It alleges that the Defendant sold and installed hazardous asbestos products which were accompanied, throughout the transaction by representations that the products were safe for use in Plaintiff's school. Those representations were apparently made in the form of express warranties conveyed through Defendant's advertisements. Plaintiff further avers that the Defendant made those representations, knowing them to be false, for the purpose of inducing the sale and that the plaintiff was so persuaded to purchase and install the defective products to its detriment. The result, according to the Plaintiff, was the contamination of its school furnishings which in turn posed a

health hazard to all occupants of the building.

Plaintiff goes on to allege that the Defendant fraudulently concealed knowledge of asbestos' dangerous properties. While the missing of a material fact does not always constitute fraudulent concealment, where the seller intentionally conceals or suppresses a known fact "for no other purpose than to deceive and mislead the [purchaser], and where, in such case the [purchaser] has no equal means of information, he must be regarded as deceived and defrauded." *Hanson v. Edgerly*, 29 N.H. 343, 358 (1854). In the instant case, Plaintiff alleges that Defendant's desire to "make the sale" motivated it to conceal the fact that it has reason to know that asbestos posed a serious health risk to all those who might come into contact with it. If the court accepts this allegation as true, as it must for our purposes here, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), then the court must conclude that the Plaintiff has made out a claim for fraudulent concealment.

Our New Hampshire Supreme Court has said, in effect, that that which would be fraud if done by an individual constitutes conspiracy if done jointly and according to a common plan. *Stevens v. Rowe*, 59 N.H. 578 (1880). It should not be surprising, then, that Plaintiff's complaint includes a claim for civil conspiracy. Defendant moves to dismiss that count on the grounds that Plaintiff failed to allege the essential elements of the cause of action and hence, cannot recover.

There is no such thing in this state as a civil action based upon conspiracy alone. *Stevens v. Rowe*, 59 N.H. 578. "The ground for recovery is found in the acts done, not the plans made. The declaration charges acts by, and the demurrer presents no question of the Plaintiff's ability to prove his allegations." *Fitzhugh v. Railway*, 80 N.H. 185, 189, 115 A. 803 (1921). Plaintiff alleges that Defendant and other asbestos manufacturers intentionally suppressed material information to defraud Plaintiffs.

Plaintiff next alleges that the sale of asbestos products by Defendant constitutes nuisance. Defendant moves to dismiss the charge on the grounds that it fails to state a claim upon which relief can be granted. "A private nuisance may be defined as an activity which results in unreasonable interference with the use and enjoyment of another's property." *Robie v. Lillis*, 112 N.H. 492, 494, 299 A.2d 155 (1972). The creator of the nuisance is responsible in his capacity as a property owner if a nuisance arises from the use of property in an unreasonable manner. *Shea v. City of Portsmouth*, 98 N.H. 22, 94 A.2d 902 (1953). But, in the instant case, Plaintiff seeks to recover from Defendant not in its capacity as a property owner, but in its capacity as a manufacturer. Furthermore, the Defendant's ability to abate or relieve the complaint of nuisance, a hallmark of the cases listed in New Hampshire, are absent in the case at bar. For that reason, Plaintiff's claims are more properly addressed herewith.

Similarly, Plaintiff's trespass claim must also be dismissed. "[U]nder the established law of this state a trespass must be an intentional invasion of the property of another." *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 54, 289 A.2d 68 (1972); *See also, Carter v. Thurston*, 58 N.H. 104, 107 (1877); *White v. Suncook Mills*, 91 N.H. 92, 98, 13 A.2d 729 (1940). In the instant case Defendants ownership and control of the asbestos products ceased at the time of sale. The Plaintiff purchased the product and then brought it onto its premises. Thus it was Plaintiff who was responsible for the presence of the asbestos in the school. As such, the circumstances of this case do not lend themselves to traditional notions of trespass. Whereas the alleged injury stems from a sale, Plaintiff's claims are more adapted to contract law or strict liability. Accordingly, the trespass claim is dismissed from the suit.

Plaintiff further seeks to recover under theories of indemnification and restitution.

**134**

Defendant moves to dismiss both on the grounds that Plaintiff fails to state a claim upon which relief can be granted.

■ In New Hampshire, it is well settled that one:

> ... can obtain indemnification, a complete shifting of liability against another where the indemnitee's liability is derivative or imputed by law, see *William H. Field Co. v. Nuroco Woodwork, Inc.,* 115 N.H. 632, 634, 348 A.2d 716, 718 (1975) (citing *Morrissette v. Sears Roebuck & Co.,* 114 N.H. 384, 387, 322 A.2d 7, 19 (1974), or where an express or implied duty to indemnify exists. *See, Sears Roebuck & Co. v. Philip,* 112 N.H. 282, 286, 294 A.2d 211, 213 (1972); *Wentworth Hotel v. Gray, Inc,* 110 N.H. 458, 460–61, 272 A.2d 583, 585 (1970).

*Consolidated Utility Equipment Services, Inc. v. Emhart Manufacturing Corp.,* 123 N.H. 258, 261, 459 A.2d 287 (1983). Thus, there can be two bases for an indemnification claim: tort or contract. The latter, in turn may involve either an express or implied contract to indemnify. *Royer Foundry & Machine Co. v. New Hampshire Grey Iron, Inc.,* 118 N.H. 648, 392 A.2d 145 (1978).

■ Plaintiff's memorandum in opposition to the motion to dismiss wholly fails to address Plaintiff's indemnity claim. Hence, the court cannot be sure upon which basis the Plaintiff sought to rely. Even so, neither prove apposite. The contractual theories of indemnification are unavailable to the Plaintiff as it failed to allege the existence of either an express or implied contract to indemnify between the parties. As noted above, an indemnity claim would be if Plaintiff were found liable, in tort, to another on account of the presence of asbestos in the school and Plaintiff's liability was purely passive. *Sears Roebuck & Co. v. Philip, supra.* However, Plaintiff has yet to be found liable to anyone for any claim arising out of asbestos exposure. Accordingly, Plaintiff's indemnity claim is dismissed.

■ Similarly, Plaintiff's restitution claim must also be dismissed. Once again the court notes that the Plaintiff's memorandum in opposition to the motion to dismiss wholly fails to address Plaintiff's restitution claim; it is as if it concedes defeat on the legal argument. However, both this court and the defendant perceive Plaintiff's claim to be vested on Restatement of Restitution § 115 on the doctrine of "Emergency Assistance". However, Plaintiff fails to demonstrate that the Plaintiff was performing Defendant's duty after notifying the Defendant of its duty to act. Rather, Plaintiff appears to have been acting as a volunteer when it removed the asbestos; perhaps a prudent volunteer, but nonetheless a volunteer. Accordingly, the restitution claim is dismissed.

Plaintiff's Count VIII requests an award of punitive and exemplary damages in the amount of one million dollars ($1,000,000.00). Plaintiff contends that because the Defendant acted wantonly and recklessly—exhibiting bad faith and gross negligence by concealing and conspiring to conceal the dangerous qualities of asbestos—the court is justified in awarding such damages. Defendant moves to dismiss Count VIII on the grounds that punitive and exemplary damages are not recoverable in New Hampshire.

"Exemplary or punitive damages are generally defined or described as damages which are given as an enhancement of compensatory damages because of the wanton, reckless, malicious or oppressive character of the act ..." *Vratsenes v. N.H. Auto, Inc.,* 112 N.H. 71, 72, 289 A.2d 66 (1972), *quoting* 22 Am.Jur.2d Damages § 236 (1965). Where such damages are allowed, they are awarded not to compensate the injured party but to penalize the wrongdoer and deter potential wrongdoers from committing like offenses in the future. *See, Curtis Publishing Co. v. Butts,* 388 U.S. 130, 161, 87 S.Ct. 1975, 1994, 18 L.Ed.2d 1094 (1967).

However, in New Hampshire, the punitive function of exemplary damages has been rejected in forceful and colorful language. "the idea is wrong. It is an

unsightly and unhealthy excrescence deforming of the symmetry of the body of the law." *Fay v. Parker*, 53 N.H. 342, 382 (1872). This anathema is found in less vitriolic language in *Bruton v. Corporation*, 87 N.H. 304, 179 A. 185 (1935). *Vratsenes v. N.H. Auto Inc., supra.* Nevertheless, the New Hampshire Supreme Court,

> has recognized that in cases where the acts complied of were wanton, malicious, or oppressive, the compensatory damages for the resulting actual material loss can be increased to compensate for the vexation and distress caused the plaintiff by the character of defendant's conduct.

*Vratsenes v. N.H. Auto, Inc., supra*, 112 N.H., at 72, 289 A.2d 66.

■ In sum "punitive" damages cannot be granted in this action as it is not the purpose of a civil action to "punish" the defendant. Similarly, "exemplary" damages cannot be granted in this action as it is not the purpose of a civil action to "make an example of" the defendant. Rather, the purpose of this action is to compensate the Plaintiff for its loss. As such, it is only fitting that an award of compensatory damages should be made to include compensation for the vexation and distress caused the Plaintiff by the character of Defendant's allegedly wanton, malicious, or oppressive conduct. "[N]o damages other than compensatory are to be awarded. However, when the act involved is wanton, malicious, or oppressive, the compensatory damages awarded may reflect the aggravating circumstances." *Vratsenes v. N.H. Auto, Inc. supra* at 73, 289 A.2d 66.

■ The Defendant's last motion is one for a more definite statement of the allegations of fraud contained in Count V (fraudulent misrepresentation) and Count VII (conspiracy). The motion is made pursuant to Fed.R.Civ.P. 12(e). Granting of such motion is appropriate only when the pleadings are "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading ..." Fed.R. Civ.P. 12(e), *See* Note to Subdivision (e). The motion is granted sparingly since it is not to be used as a substitute for discovery in trial preparation, *Id.*, but is to be used only when a pleading is too general.

■ A claim alleging fraud or conspiracy must also meet the requirement of Fed.R.Civ.P. 9(b), "Pleading in Special Matters", that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. The state of mind of the Defendant need only be generally averred. Fed.R.Civ.P. 9(b). This rule does not require the pleadings of detailed evidentiary matter, but it does require identification of circumstances constituting fraud. *Trussell v. United States Underwriters, Ltd.*, 228 F.Supp. 757, 774 (D.C. Col.1964).

*Trussell* involved a fraud action by stock purchasers against stock brokers. The motion for more definite statement was made in alternative to a motion to dismiss pursuant to Rule 12(b) as in the present case. The plaintiff alleged insufficient circumstances of the fraud and so the motion was granted in order to allow the framing of a responsive pleading with the advice that the Plaintiff "should identify particular defendants with whom they dealt ... designate the occasions ... and designate what affirmative misstatements or half truths were directed [to which particular individuals] ..." *Id*, 774–775.

■ In *Trussell* the alleged fraud arose from a detailed series of sales transactions and the Defendant could not reasonably be expected to refute the charges without having been appraised of the details of who misrepresented which facts to whom and on what occasions those misrepresentations took place. In the instant case, the essential circumstances of the alleged fraud are different in that they do not occur within specific transactions between individuals but rather the misrepresentations were contained within advertisements attesting to the safety of the asbestos products. Those advertisements were promulgated by the Defendant and directed toward potential purchasers such as the Plaintiff. The Defendant is ably situated to know what advertisements were made around the date of the purchase in the instant case.

Likewise, the Defendant is in a better position than the Plaintiff to know what medical and scientific tests had been conducted on asbestos products, what safety information was known, and what information was withheld. These are all matters peculiarly within the Defendant's knowledge, and as such the requirement of particularity is somewhat relaxed. *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757 (D.C.Col. 1964). In any event, to require greater specificity from the Plaintiff would be to require it to plead evidence—something which it is not required to do. *Id.*

The Plaintiff, in sum, pled the circumstances of the alleged fraud and conspiracy with sufficient particularity to meet the requirements of Federal Rule of Civil Procedure 9(b). The Defendant has enough information on the circumstances of the alleged fraud and conspiracy to reasonably be expected to frame an answer to Counts V and VI. Therefore, the motion pursuant to Fed.R.Civ.P. 12(e) is denied

In conclusion, Defendant's motion to dismiss is granted on the express and implied warranty counts and the nuisance, trespass, restitution and indemnification counts. The motion to dismiss the remaining counts is denied as is the motion for a more particular statement.

So Ordered.