McNell v. Hugel                          CV-93-462-JD   03/31/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Thomas R. McNell

    v.                                    Civil No. 93-462-JD

Max Hugel, et al.


O R D E R


    The plaintiff, Thomas R. McNell, brought a multi-count action against defendants Max Hugel; Joseph A. Millimet, Esq.; Matthias J. Reynolds, Esq.; Devine, Millimet, Stahl & Branch ("DMSB"); Asbury Park Press; Carol Napolitano; and Paul J. Perito, Esq.[1]  Currently before the court are motions to dismiss filed by defendant Max Hugel (document no. 56), defendants DMSB and Joseph Millimet and Matthias Reynolds (document no. 57), and defendant Paul Perito (document no. 62).  Also before the court is defendant Perito's motion for a permanent injunction (document no. 63).  Jurisdiction is grounded upon 28 U.S.C. § 1332(a)(1).


Background[2]

    This action arises out of a long and acrimonious relationship between McNell and defendant Hugel.  The facts as alleged by

_____

[1]Defendants Asbury Park Press and Carol Napolitano were subsequently dismissed.

[2]The facts of this case were originally set forth in the court's order dated May 16, 1994.

McNell follow. From 1973 through 1975 Hugel, then president of Brother International Corporation ("Brother International"), was involved in a business relationship with McNell and McNell's brother. McNell's wholly owned securities firm, McNell Securities Corporation, was the principal firm trading Brother International stock. Amended Complaint, ¶ 20, Exhibit 1. According to McNell, Hugel participated in several illegal business acts, including providing the McNell brothers with inside information on Brother International and funnelling funds to McNell Securities. Amended Complaint, ¶ 20; Amended Complaint, Exhibit 1. As a result, Hugel became extremely wealthy, made large campaign donations to Republican candidates and was appointed to the CIA, eventually becoming Director of Covert Operations in May 1981.

McNell, who claims he was "appalled" that Hugel had been appointed to such a sensitive position, went first to the White House and then to the Washington Post to report on Hugel's stock fraud and provide secretly made recordings of many of his conversations with Hugel. The Post published McNell's account of the stock fraud on July 14, 1981, stating that Hugel both denied any wrongdoing and accused the McNell brothers of threatening him with blackmail. Amended Complaint, ¶ 23, Exhibit 1. Following publication of the Post story, Hugel was forced to resign from

2

the CIA. McNell, who had illegally taken funds "to hide from the wrath of those elements of the CIA who had covered up [Hugel's] criminal background prior to his appointment to higher office," fled with his brother shortly before the Post published the article. Amended Complaint, ¶ 24.[3]

In 1982, Hugel filed a libel action against the McNell brothers. On February 24, 1983, Hugel obtained a default judgment. The McNells unsuccessfully appealed. See generally Hugel, 886 F.2d at 1-3.

In August 1987, Hugel gave a series of interviews from Salem, New Hampshire to defendant Napolitano, an Asbury Park Press reporter. McNell asserts that these interviews were an overt act in furtherance of a conspiracy with Millimet, Reynolds, Perito and DMSB "to make false and malicious accusations against [him] to the Asbury Park Press." Amended Complaint, ¶ 26. McNell claims Hugel made false and malicious accusations when he told the Asbury Park Press that McNell had "tried to blackmail him," that McNell had libeled him in 1981, that he had been "used" by McNell, that McNell had "forged a check and cashed it,"

_____

[3]"In May 1987 [McNell and his brother] surfaced -- with the help of California law enforcement officers -- and faced criminal charges of conspiracy to defraud the U.S. Government and interstate transportation of stolen goods. The McNells pleaded guilty and were sentenced to prison terms for their crimes." Hugel v. McNell, 886 F.2d 1, 3 (1st Cir. 1989), cert. denied, 494 U.S. 1079 (1990).

3

that McNell was involved in a "communist conspiracy" and that the McNells were hiding in Cuba.  Amended Complaint, ¶¶ 28, 29, 30, 33, 34.

The Asbury Park Press published the front page story on August 30, 1987.  The paper was widely distributed in New Jersey, New York City and other communities where McNell had many friends, relatives, clients and former business associates.  Amended Complaint ¶ 39.  McNell did not discover the existence of the article until December 1990 and "did not learn of the causal relationship of said injury until early summer of 1992, . . . when [he] learned that readers of the libelous article believed defendant Hugels [sic] lies . . . ."  Amended Complaint, ¶ 13.

On May 16, 1994, the court granted in part motions to dismiss filed by Hugel, Millimet, Reynolds, DMSB and Perito.[4] The court dismissed all claims for libel and slander for failure to be filed within the three-year period prescribed by RSA § 508:4.  The court also found that McNell failed to articulate his conspiracy claim sufficiently to enable the defendants to prepare adequate responses and, pursuant to Rule 15(a), Fed. R. Civ. P., allowed him an opportunity to file a second amended complaint stating clearly and concisely the specific conduct constituting

_____

[4]The court also dismissed defendant Asbury Park Press for lack of personal jurisdiction.

4

the conspiracy. In response, McNell filed an amended complaint which is fifty-six pages in length and contains eleven separate causes of action. Defendants Hugel, Millimet, Reynolds, DMSB and Perito have moved to dismiss the second amended complaint on various grounds.

## Discussion

McNell has attempted to allege several substantive non-conspiracy counts. See Second Amended Complaint at Count I (defamation and slander), Count II (defamation and libel), count III (negligence), Count IV ("fraud on the court"), Count VI (blackmail and extortion), Count VII ("misrepresentation and nondisclosure and deceit"), Count VIII (invasion of privacy), Count IX ("misuse of legal procedure, malicious prosecution, wrongful civil proceedings and abuse of process") and Count X (fraud). However, in its May 16, 1994, order, the court granted McNell leave to amend only his conspiracy claim. McNell has not sought the court's permission to set forth new substantive counts. For this reason, these counts are dismissed to the extent that they do not allege conspiracy claims. The court

5

therefore need not outline the several additional deficiencies inherent in these allegations.[5]

In the preamble to the Second Amended Complaint McNell states,

> In response to the Court noting at page 25 of the ORDER dated May 16, 1994, that "it is not evident McNell is alleging that the slander and libel constitute the underlying tort" that is correct. The underlying tort was the conspiracy to defraud plaintiff by committing a fraud on the Court in the underlying Hugel V. McNell litigation (See: Hugel V. McNell, C. 82-615-L and Hugel V. McNell, 886 F.2d, 1, 1989) or, in the alternative, to commit a fraud on the Court in order to defraud plaintiff.

Second Amended Complaint at 2. McNell further states, "The fraud upon the court was the essential basis for the rest of the conspiracy to succeed and go forward and the other objectives in addition to defrauding plaintiff be achieved." Id. at 3. Accordingly, nothwithstanding McNell's labeling of his claims, the court treats Counts I, II, IV, V, VI and X as alleging the same claim for conspiracy based on the alleged fraud on the court identified in the preamble.

---

[5]The court does note, however, that Count III of the Second Amended Complaint, alleging a claim for negligence against former defendant Carol Napolitano, is immaterial to the plaintiff's action because it contains no claims against the current defendants. Therefore, even if Count III had not been filed without leave to amend, the court would have ordered it stricken from the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(f) ("upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

The defendants seek dismissal of the complaint on several grounds, including McNell's failure to state a claim for which relief may be granted and res judicata principles. Because the court agrees that McNell has failed to allege adequately a conspiracy, the court grants the motions to dismiss.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Great specificity is not required to survive a Rule 12(b)(6) motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of `a generalized statement of facts from which the defendant will be able to frame a responsive pleading.'" Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)). In so doing, however, a plaintiff cannot rely on "bald assertions, unsupportable con-clusions, and `opprobrious epithets.'" Chongris v. Board of

7

Appeals, 811 F.2d 36, 37 (1st Cir.) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)), cert. denied, 483 U.S. 1021 (1987).  In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "`only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

I. Counts I, II, IV, V, VI, VII and X: Conspiracy to Commit Fraud

Defendants Hugel, Millimet, Reynolds and DMSB contend these counts should be dismissed because (1) the plaintiff has failed to allege any factual basis to support the essential elements of fraud or conspiracy to commit fraud; (2) the plaintiff has failed to allege fraud with sufficient particularity to satisfy Rule 9(b), Fed. R. Civ. P., and (3) the claims alleged therein are barred by the applicable statute of limitations.

New Hampshire does not recognize a civil action based on conspiracy alone.  Town of Hooksett Sch. Dist. v. W. R. Grace, 617 F. Supp. 126, 133 (D.N.H. 1984).  "For a civil conspiracy to exist, there must be an underlying tort which the alleged

8

conspirators agreed to commit." <u>University Sys. of New Hampshire v. U.S. Gypsum Co.</u>, 756 F. Supp. 640, 652 (D.N.H. 1991). Under New Hampshire law, "[t]o establish fraud, the plaintiff must prove that the defendant made a fraudulent misrepresentation for the purpose or with the intention of causing the plaintiff to act upon it. While the plaintiff need not establish fraud in his pleadings, in order to withstand a motion to dismiss the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions." <u>Proctor v. Bank of New Hampshire.</u>, 123 N.H. 395, 399, 464 A.2d 263, 265 (1983) (citation omitted).

The court finds that Counts I, II, IV, V, VI, VII and X fail to state a claim for fraud under New Hampshire law as to any defendant. Specifically, the court has examined these counts and has found no allegation that any of the defendants made any representation for the purpose or with the intention of causing the plaintiff to act upon it. Further, because the plaintiff has failed to state a claim for the underlying tort of fraud, the court finds the plaintiff has failed to state a claim for conspiracy as to any defendant.

9

## II.  Count XI: Conspiracy to Violate Constitutional Rights

In Count XI McNell claims the defendants conspired to deprive him of (1) his right to due process under the Fifth and Fourteenth Amendments, and (2) his First Amendment right to petition the government.  Second Amended Complaint, ¶ 106.

The due process clause of the Fourteenth Amendment does not address private conduct "however discriminatory or wrongful." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974) (quoting Shelley v. Kraemer, 334 U.S. 1 (1948)).  Where "individual-state relationships" may be involved in otherwise private conduct, "the dispositive question . . . is not whether any single fact or relationship presents a sufficient degree of state involvement, but rather whether the aggregate of all relevant factors compels a finding of state responsibility." Jackson, 419 U.S. at 360.

The Fifth Amendment applies to and restricts "only the Federal Government and not private persons."  Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952).

In addition, "a conspiracy to violate First Amendment rights is not made out without proof of state involvement."  United Broth. of Carpenters & Joiners v. Scott, 463 U.S. 825, 832 (1983).

10

Although McNell alleges that the defendants engaged in conspiratorial conduct involving the misuse of certain judicial processes, the court finds that he has alleged no facts indicating either state or federal involvement in, or state or federal responsibility for, such conduct. Further, McNell has failed to allege that the defendants acted in any manner other than as purely private persons. Therefore, the court finds that Count XI fails to state a claim for conspiracy to violate the plaintiff's rights under the First, Fifth or Fourteenth Amendments.

## Conclusion

The plaintiff has failed to assert adequately a conspiracy claim against the defendants. The defendants' motions to dismiss (documents nos. 56, 57 and 62) are granted. Defendant Perito's motion for a permanent injunction (document no. 63) is denied. The clerk of court shall close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 31, 1995

cc:  Thomas R. McNell
     Gary M. Burt, Esquire
     James R. Muirhead, Esquire
     Andrew L. Sandler, Esquire

11