**CITY OF MANCHESTER**

v.

**NATIONAL GYPSUM COMPANY, United States Mineral Products Company, United States Gypsum Company and John Doe.**

Civ. A. No. 84–0443 P.

United States District Court,
D. Rhode Island.

May 30, 1986.

Stanley M. Brown, Michael Hall, Brown & Nixon, Manchester, N.H., Edward Westbrook, Blatt & Fales, Barnwell, S.C., Edward J. Westbrook, Blatt & Fales, Charleston, S.C., Daniel A. Speights, Hampton, S.C., for City of Manchester.

John A. Graf, McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., Lawrence T. Hoyle, Jr., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Nat. Gypsum Co.

William Tocchi, Manchester, N.H., for Fibreboard Corp.

Alan Rindler, Morrison, Mahoney & Miller, Boston, Mass., for W.R. Grace Co.

Michael Callahan, Gallagher, Callahan & Gartrell, Concord, N.H., for Empire Ace Insulation Mfg.

John Peltonen, Stark & Peltonen, Manchester, N.H., for H.K. Porter Co., Inc.

John T. Broderick, Jr., Devine, Millimet, Stahl & Branch, Manchester, N.H., for U.S. Mineral Products Co.

Stephen G. Herman, Holland, Donovan, Beckett & Welch, Exeter, N.H., for U.S. Gypsum Co.

Rebecca Schafer-Mills, Hall, Morse, Gallagher & Anderson, Concord, N.H., for W.R. Grace Co.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This case is a diversity action brought by the City of Manchester against defendants, National Gypsum Company, United States Mineral Products Company, United States Gypsum Company, and John Doe for damages associated with the placement, removal and replacement of asbestos products from sixteen schools and other public buildings within the city. The action was instituted by a writ of summons filed in the Superior Court of Hillsborough County, New Hampshire, on February 22, 1983. It was removed to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1441 on March 17, 1983. The case was then transferred to the United States District Court for the District of Rhode Island, the United States District Court judges for the District of New Hampshire having recused themselves.

The plaintiff is a resident of New Hampshire. Defendant National Gypsum Company is a Delaware corporation with its principal place of business in Dallas, Texas. Defendant U.S. Mineral Products Company

is a New Jersey corporation with its principal place of business in Stanhope, New Jersey. Defendant U.S. Gypsum is a foreign corporation with its principal place of business in Wilmington, Delaware. All the defendant corporations do business in New Hampshire. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Currently before the Court are the Motions to Dismiss of defendants National Gypsum, U.S. Mineral Products and U.S. Gypsum, the Motion to Amend Complaint of the plaintiff, and the plaintiff's Motion to Add W.R. Grace & Co. as a party defendant. Because the substance of these pleadings is intertwined, I will address the merits of the motions together.

*Facts*

In its Complaint, the plaintiff alleges as follows: From 1946 to 1975, the City of Manchester arranged for the construction of and subsequent additions and modifications to a number of elementary, junior high, and high schools and other public buildings. As part of this construction, plaster products containing high levels of asbestos were placed on the ceilings of classrooms, halls, laboratories, administrative offices, and other rooms located throughout the schools and buildings.

The City of Manchester claims these asbestos products, placed throughout the schools and public buildings, were "mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations through their authorized agents, servants, and employees acting in the course of and in furtherance of the business of the defendant corporations." It also claims that the presence of these asbestos products in the various buildings posed an imminent and serious health danger to all those who normally come into contact with the buildings, *e.g.*, school children, teachers, administrative and maintenance personnel.

In a series of counts stating different legal theories, the City of Manchester seeks recovery of damages totalling 6 million dollars plus interest and costs. These damages were allegedly incurred because the City was forced to and has instituted a costly program to remove and abate the dangers of the asbestos products in the buildings resulting in "various consequential expenses, serious disruptions in the operation of said schools and public buildings, and the investment of considerable time by administrative personnel."

*Legal Standards*

A complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibbons*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976). The question must be resolved in the light most favorable to the plaintiff with any doubt resolved in his behalf. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Accordingly, the Court must deny a motion to dismiss if the allegations of the complaint permit relief to be granted on any theory, even one not expressly stated therein. *Adams v. Bell*, 711 F.2d 161, 187 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984).

The second sentence of Fed.R.Civ.P. 15(a) encourages courts to look favorably on a party's request to amend: "leave shall be freely given when justice requires." *See also e.g., Forster Manufacturing Co. v. FTC*, 335 F.2d 47 (1st Cir.1964), *cert. denied*, 380 U.S. 906, 85 S.Ct. 887, 13 L.Ed.2d 794 (1965). The grant or denial of leave to amend is a matter that is within the discretion of the trial court, *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 896 (1st Cir.1979), and involves the balancing of several factors including delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, futility, and most importantly, prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401

U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). If no prejudice is found, leave to amend in most cases should be allowed. *See, e.g., Bamm, Inc. v. GAF Corp.,* 651 F.2d 389, 391 (5th Cir.1981); *Corey v. Look,* 641 F.2d 32, 38 (1st Cir.1981).

*Discussion*

*Negligence and Strict Liability Claims*

Defendants National Gypsum, U.S. Mineral Products, and U.S. Gypsum have moved to dismiss Counts I, II, and VIII of the Complaint on the grounds that the plaintiff seeks recovery in tort only for *economic* losses associated with the removal and abatement of asbestos products in the City's schools and public buildings. The defendants claim that the City has failed to allege the necessary tortious or accidental occurrence resulting in *physical* harm to person or property that is required by New Hampshire law. Additionally, the defendant United States Gypsum Co. argues that these counts are barred by the statute of limitations.

The plaintiff responds that the Complaint implicitly alleges physical harm to property because it claims the contamination of plaintiff's schools and public buildings with "unreasonably dangerous" asbestos products, which made the buildings unsafe, thereby damaging the buildings and requiring the costly removal of the asbestos so as to restore the structures to their prior safe condition, and so as to discharge the City's duty to protect its citizens from the risk of unreasonable harm. In an abundance of caution, the plaintiff seeks to amend its Complaint to make explicit this claim. The proposed amendment is set out in relevant part in the margin.[1] The plaintiff also asserts that the running of the statute of limitations was tolled by the defendants' fraudulent concealment and by the fact that the plaintiff is a municipality.

I will assume, for purposes of argument, that New Hampshire law, as the defendants argue, does not allow recovery in tort for purely "economic" damages, but relegates recovery for those damages to contract law. My inquiry then becomes whether the plaintiff has made a sufficient allegation of "property" damage so as to state tort claims and withstand the motions to dismiss.

I would note at the outset of this discussion that it is at best, somewhat artificial to try to characterize the damage plaintiff claims as either one or the other, as either physical damage to its property or economic damage. Such pigeon holes may have been useful when tort and contract suits were less complex, but today in situations where dangers are discovered only after many years and where the harm caused or to be caused comes from allegedly dangerously defective materials which must be

---

**1.** Count I should be amended to read in part as follows:

AND THAT AS A REASONABLY FORESEEABLE RESULT of the aforesaid negligence, recklessness, willfulness and wantonness of the defendants and the presence of said dangerous asbestos products in the Manchester schools resulting therefrom, said schools became contaminated by said asbestos, which damages the ceilings, walls, floors, furniture, drapes and air quality in said buildings and made them unfit to be used as schools, and the usefulness and value of plaintiff's school property was thereby substantially diminished; that the plaintiff was forced to and has instituted a costly program to remove and abate the dangers of said asbestos products in its schools and other public buildings, and that in addition, said removal and abatement process has caused and will cause various consequential expenses, serious disruptions in the operation of said school and public build-ings, and the investment of considerable time and administrative personnel; that the plaintiff was prevented from discovering the existence of a cause of action against the defendants for these damages because the defendants concealed and kept from the public, including the plaintiff, the dangers of said asbestos products, and this action has been brought within less than six years of the plaintiff's first reasonable opportunity to discover the existence of the claims it now raises against the defendant; ALL TO THE DAMAGE of the plaintiff, as it says, in the amount of Six Million Dollars ($6,000,000), plus interest and costs.

As the Complaint is drafted, the factual allegations of Count I are incorporated by reference in each subsequent Count, and the plaintiff intends to incorporate the above amended language into each of the Counts of the Complaint.

removed so as to avoid further dangers, the reasons for such divisions are less clear and the ability to make such distinctions is questionable.

Indeed, the cases which have dealt with this same question, either in the asbestos situation or in that of other hazardous or toxic chemicals, reflect this dilemma. There are courts which have characterized the type of damage which has been claimed here as economic damage, *see, e.g., Arizona v. Cook Paint & Varnish Co.*, 391 F.Supp. 962 (D.Ariz.1975), *aff'd*, 541 F.2d 226 (9th Cir.1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977), as property damage, *see, e.g., Pearl v. Allied Corp.*, 566 F.Supp. 400 (E.D.Pa.1983), and as a hybrid of the two, *see, e.g., Cinnaminson Township Board of Education v. U.S. Gypsum*, 552 F.Supp. 855 (D.N.J.1982).

For these reasons, defendants'. reliance on the Restatement of Torts 2d § 7(3)(1965) and comment e is not dispositive of the matter, nor, in truth, very helpful. The Restatement defines "physical harm" as "the physical impairment of the human body, or of land or chattels." This definition only states the problem; it does not delineate the line between physical damage and economic harm. The limitations of the Restatement definition are particularly apparent when one realizes that the problem of characterizing highly toxic substances and the damage they cause is of relatively recent origin. Tort law and its definitions are of a constantly evolving nature.

Thus, in order to determine in which category the damages alleged here fit, I will turn, as have other courts, to the policy reasons behind the division between "economic" and. "physical" damages. These policy reasons basically relate to the line between contract ("economic") actions and tort ("physical") product liability actions.

Perhaps, the best exploration of the policy differences is contained in *Pennsylvania Glass Sand v. Caterpillar Tractor*

Co., 652 F.2d 1165 (3d Cir.1981).[2] I will, therefore, quote extensively from that opinion.

Tort law rests on obligations imposed by law, rather than by bargain, and the thrust of [tort products liability] is that as a matter of public policy a duty should be imposed on manufacturers to "warrant" the safety of their products. The gist of a products liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or his property. On the other hand, contract law, which protects expectation interests, provides the appropriate set of rules when an individual wishes a product to perform a certain task in a certain way, or expects or desires a product of a particular quality so that it is fit for ordinary use.

.... "Economic loss" has been defined as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" damages—Tort or Contract?* 114 U.Pa.L.Rev. 539, 541 (1966). This definition of economic loss accords with the policy of warranty law to protect expectations of suitability and quality. The items most frequently sought as damages for unsuitable products are the reduction in value caused by the defect, costs of repair or replacement, and loss of profits.

This does not mean, however, that every prayer for relief that seeks the cost of repairing a damaged product entails the type of economic loss traditionally encompassed within warranty law. Commentators and several courts have carefully distinguished economic loss from physical harm or property damage. The

**2.** *Pennsylvania Glass Sand* involved a suit for damages spent on repair and replacement as a result of a fire in a front-end loader. The opinion discussed the policy reasons quoted in the

text in addressing which types of defects or injuries are to be committed to the principles and policies of tort law and which are to be relegated to contract law.

line that is drawn usually depends on the nature of the defect and the manner in which the damage occurred. Defects of quality, evidence by internal deterioration or breakdown, are assigned to the economic loss category, while the loss stemming from defects that cause accidents "of violence or collision with external objects" is treated as physical injury. . . .

*Id.* at 1169–70 (footnotes omitted); *see also Town of Hooksett School District v. W.R. Grace Co.,* 617 F.Supp. 126, 230–31 (D.N.H. 1984); *Cinnaminson Township Board of Education v. U.S. Gypsum Co.,* 552 F.Supp. at 858–59.[3]

Thus, the focus in this case in determining whether the plaintiff has stated a claim for physical harm is not exclusively on the measure of the plaintiff's damages—for abatement program costs and consequential expenditures—but, more properly, is on the nature of the defect and the manner in which the damages occurred. What the City of Manchester alleges about the defendants' products

> is not that it did not perform its function in the ceiling plaster, but rather that it posed a grave risk of personal injury to those in contact with it. Thus, the manufacturer's responsibility to guard against making a product which entails risk of personal harm or property damage, a major concern underlying the doctrine of strict liability in tort, is involved in this case. The case does not primarily involve a problem with the product which

mandates its replacement or repair in order to perform its function, or a loss of profit stemming from a defect in the product's performance, but rather the replacement of the product because of a grave personal safety risk.

*Cinnaminson Township Board of Education,* 552 F.Supp. at 858–59.[4]

■ The City of Manchester's Complaint does not concern the slow and gradual deterioration of its products nor the failure of the products to meet some standard of quality. Instead the Complaint alleges that the hazardous asbestos products have contaminated the City of Manchester's buildings and the objects in them in a way which makes it harmful to the users. Specifically, the asbestos has purportedly contaminated the ceilings, walls, floors, furniture, drapes, and air quality of the buildings. The Complaint then alleges that the physical damage to the property may be measured by the cost of repairing and replacing the asbestos products. *See, e.g., University System of New Hampshire v. National Gypsum,* — F.Supp. —, No. 84–716–L (D.N.H. July 2, 1985); *Town of Hooksett School District v. W.R. Grace Co.,* 617 F.Supp. at 130–31; *see also Commonwealth of Pennsylvania v. General Public Utilities Corp.,* 710 F.2d 117, 122–23 (3d Cir.1983) (radioactivity and radioactive materials from nuclear accident); *Shooshanian v. Wagner,* 672 P.2d 455 (Alaska 1983) (urea formaldehyde foam insulation).[5] Consequently, I find that the

---

**3.** The cases cited by the defendants discuss these same sorts of policy rationales. *See, e.g., R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 826–27 (8th Cir.1983); *State of Arizona v. Cook Paint and Varnish Co.,* 391 F.Supp. 962, 971 (D.Ariz.1975), *aff'd,* 541 F.2d 226 (9th Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); *Industrial Uniform Rental v. International Harvester,* 317 Pa.Super. 65, 463 A.2d 1085, 1092–93 (1983).

**4.** I believe this language in *Cinnaminson* persuasive and do not believe it is changed in any way by the fact that the New Jersey law being applied in that case allows recovery for both physical and economic harm in tort actions. The court, in this passage, was evaluating the damages in terms of the differences between

tort and contract actions as enunciated by the *Pennsylvania Glass Sand* court.

**5.** Because of their primary focus on the measurement of damages as the basis for deciding whether a given situation stated "economic" or "physical" harm, I reject the reasoning of cases such as *State of Arizona v. Cook Paint and Varnish Co.,* 391 F.Supp. 962 (D.Ariz.1975), *aff'd,* 541 F.2d 226 (9th Cir.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977) (polyurethane foam insulation products) and *Sioux City Community School District v. International Telephone & Telegraph Corp.,* 461 F.Supp. 662 (N.D.Iowa 1978) (rooftop reheat multizone heating units), relied on by defendants. I also believe the thrust of those cases ignores the existence of physical damage by way

City of Manchester has made a sufficient allegation of physical harm to its property so as to state claims for negligence and strict liability under New Hampshire law. The City is entitled to offer evidence to support these claims.[6]

As for defendant United States Gypsum Co.'s arguments about the statute of limitations, I do not find them persuasive. The defendant claims that Counts I, II, and VIII allege tortious acts committed by the defendants from 1946 to 1975, but contain no allegation that the plaintiff was prevented from discovering the defendants' alleged tortious acts during that time period. Consequently, it argues that the applicable six-year statute of limitations, N.H.R.S.A. 508:4, bars these counts since the suit was filed in 1983, over six years after the last violation could have occurred. While not conceding any defects in the original complaint, the plaintiff seeks to amend its complaint to more clearly allege that the defendants' actions prevented it from discovering the tortious acts.[7]

In New Hampshire, the statute of limitations is not a bar to a tort action until such time as the plaintiff discovers, or, in the exercise of reasonable diligence, should have discovered that it has been injured by the defendants' acts or omissions. Nor is it a bar where the plaintiff's lack of knowledge about its rights is due to fraudulent concealment by the defendants against whom the action lies. *Town of Hooksett,* 617 F.Supp. at 129; *EIMCO–BSP Services Co., v. Davison Construction Co.,* 547 F.Supp. 57, 59 (D.N.H.1982). As well-stated in *Town of Hooksett:*

> The Plaintiff claims that it could not reasonably have been expected to know of the harm done to his property before 1981. Plaintiff explains that it was unaware of its injuries because the Defendant fraudulently concealed the hazards associated with asbestos. It was not until the publication of the Justice Department Report[8] that the Plaintiff had sufficient information to appreciate the risks associated with asbestos. In stark contrast, Plaintiff claims that the Defendant had this information since the 1930's and that it failed to pass the information along to the Plaintiff and other consumers but instead made false representations concerning the adaptability of asbestos to the school environment. Suffice it to say, Plaintiff's allegations are sufficient to toll the limitation period under both the "discovery rule" and the doctrine of fraudulent concealment.

617 F.Supp. at 129.[9]

Accordingly, the motions to dismiss these counts are denied. Because the amend-

---

of contamination and exposure to unreasonable risks. The allegation of such physical damage persuaded the court in *County of Loudon v. United States Gypsum Co.,* No. Civ–3–83–329 (E.D.Tenn. Nov. 17, 1983) to modify its earlier order of Oct. 5, 1983, and allow the plaintiffs to proceed with tort theories of recovery in a case with facts similar to those alleged here. (I note, however, that I do not necessarily accept the reasoning of the *Loudon* Oct. 5 opinion).

**6.** The defendants also argue as an alternative to full dismissal, that if the Court permits tort recovery on the "contamination damage" claim, it should make clear that all other alleged damages—including the asbestos product removal, abatement, repair and replacement costs—may not be sought under those counts. In making this argument, the defendants rely on a footnote in the Nov. 17, 1983 *Loudon* opinion. This footnote states:

> [A]t this time the undersigned expresses no opinion as to whether or not the costs of repairing and replacing the ceiling, as eco-

nomic losses, are recoverable along with any property damage the plaintiffs may have suffered.

*Id.* at 3 n*. I do not believe this footnote is more than a reservation of judgment and will not adopt it to limit the plaintiff's recovery as the defendants seek. I note, again, that the measure of damages is not dispositive of whether recovery is allowed in tort. Further, many courts have allowed recovery of economic losses where there is attendant physical injury. *See, e.g., Sharon Steel Corp. v. Lakeshore, Inc.,* 753 F.2d 851, 855–56 (10th Cir.1985).

**7.** *See* proposed amendment, footnote 1 *supra.*

**8.** United States Department of Justice, The Attorney General's Asbestos Liability Report to the Congress (August 1981).

**9.** Because of my conclusions that the limitations period is tolled by both the discovery rule and the doctrine of fraudulent concealment, I need

ment the plaintiff proposes merely elaborates the allegations of its original complaint and will entail no prejudice to the defendants, the motion to amend is granted.

*Express and Implied Warranty Claims*

The defendants have moved to dismiss Counts III and IV of the Complaint, which respectively allege breaches of implied and express warranties, on the grounds that they are barred by the applicable statute of limitations. In New Hampshire the causes of action for implied and express warranties are derived from the Uniform Commercial Code. *See Brescia v. Great Road Realty Trust,* 117 N.H. 154, 157, 373 A.2d 1310, 1312 (1977); *Raymond v. Eli Lilly & Co.,* 412 F.Supp. 1392, 1403 (D.N.H.1976), *aff'd* 556 F.2d 628 (1st Cir.1977). Thus, the defendants argue that N.H.R.S.A. 382–A:2–725 requires application of a four-year statute of limitations in this case. Since the latest date that violations are alleged is 1975, over four years prior to the complaint's filing, these counts must be dismissed as stale, according to the defendants.

New Hampshire R.S.A. 382–A:2–725 provides, in relevant part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

.    .    .    .    .

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective.

This provision states that in a warranty action the limitations period normally commences to run upon the tender of delivery, and it runs even though the buyer does not know the goods are defective. *Wentworth v. Kawasaki, Inc.,* 508 F.Supp. 1114 (D.N. H.1981); *Raymond v. Eli Lilly & Co.,* 412 F.Supp. at 1403. This outcome contrasts markedly with the New Hampshire tort statute where the limitations period does not begin to run until the defect manifests itself. In this case, the Complaint alleges that the last date of purchase (or tender of delivery) was in 1975, well over four years prior to the commencement of this action in 1983.

■ The discovery rule, discussed above in reference to the tort claims, cannot toll the running of the statute of limitations as to the plaintiff's warranty claims because it has not been extended to contract actions in New Hampshire. *French v. R.S. Audley, Inc.,* 123 N.H. 476, 479, 464 A.2d 279, 282 (1983). However, the plaintiff also relies on fraudulent concealment as a reason why the defendants should not be able to use the limitations provision as a shield. The New Hampshire courts have characterized the fraudulent concealment exception as in the nature of equitable estoppel, *e.g., Lakeman v. LaFrance,* 102 N.H. 300, 304, 156 A.2d 123, 126 (1959), and have included contract actions in its application, *see Roberts v. Richard & Sons, Inc.* 113 N.H. 154, 155, 304 A.2d 364, 365 (1973) (plaintiff failed to allege fraudulent concealment and so did not come within exception). On a motion to dismiss, the allegation of fraudulent concealment in the complaint is, therefore, sufficient to toll the running of the statute of limitations. The New Hampshire warranty provision explicitly permits the application of existing law as to tolling

_____

not address the plaintiff's arguments that the limitations period is also tolled by virtue of its

being a municipality.

and comment (3) to that provision explicitly notes the fraudulent concealment exception.[10]

Accordingly, the motions to dismiss Counts III and IV are denied.

### Fraud Claims

The defendants have also moved to dismiss Counts V and VI of the Complaint asserting fraud claims for failure to allege with sufficient particularity the circumstances of those averments. Alternatively, the defendants move for a more definite statement of these claims pursuant to Fed. R.Civ.P. 12(e).[11] Without conceding the defectiveness of its original complaint, the plaintiff has moved to amend Count V so as to allege with more particularity its fraud claims. The proposed amendment is set out in the margin.[12]

The first sentence of Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Court of Appeals for the First Circuit has ruled that Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent can be inferred. *McGin-*

*ty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980).

The sufficiency of a particular pleading under Rule 9(b) depends upon a number of variables and turns on the context in which the fraud is alleged to have occurred. *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298 (1969 & Supp. 1985). The most basic consideration in determining the sufficiency of a fraud pleading is deemed to be the amount of detail necessary to give adequate notice to an adverse party so a responsive pleading can be prepared. *Id.* at p. 415; *see also McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d at 228–29. The requirements of particularity may be relaxed as to matters peculiarly within the opposing parties' knowledge. *See, e.g., County of Johnson v. United States Gypsum Co.,* 580 F.Supp. 284, 293–94 (E.D.Tenn.1984); *Trusell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774 (D.Colo.1964).

■ I conclude that the amendments proposed by the plaintiff satisfy the requirements of Rule 9(e) and cure any defect in the pleading of the fraud counts. As to each of the defendants, the plaintiff has described the content of the fraudulent statements, stated that the statements

---

10. Because of this holding, I will not at this time address the plaintiff's other arguments about when the limitations period for its warranty counts begins to run.

11. Defendant United States Gypsum Co. has also moved to dismiss these counts as barred by the applicable six year statute of limitations, R.S.A. 508:4. What I have previously stated about the statute of limitations in reference to the tort and warranty claims applies equally to these counts. Therefore, I again reject those arguments.

12. ... [T]hat the plaintiff's reliance on said statements and representations was material to the plaintiff's purchasing said asbestos products, in that the plaintiff would not have purchased said products if it had not known of and been influenced by said fraudulent misrepresentations, which more particularly included the following:
In 1956 United States Gypsum published a brochure advertising its audiocate acoustical plaster as "ideal for use in classrooms", when in fact the asbestos in said plaster was known at that time to create health hazards.

Before 1972 United States Gypsum promoted its asbestos plasters as providing an added measure of safety, when in fact the asbestos in said products was known to create health hazards.
Before 1976 National Gypsum published a brochure for Perfolite plaster which said plaster could be cleaned by vacuuming or sweeping, when in fact vacuuming or sweeping of said product would tend to release dangerous asbestos fibers. On information and belief defendants made or were members of groups and organizations which made other false and misleading statements regarding the safety of their asbestos products, which statements will be specified as they come to light during the course of discovery in this case, and by their silence about known dangers of asbestos defendants misled the public, including the plaintiff into believing said asbestos products were safe and appropriate for use in public schools; THAT AS A REASONABLY FORESEEABLE RESULT....

were contained in advertising brochures, and provided approximate dates for the statements. While the dates given cover a wide range of years, the other information about the statements should provide sufficient notice to the defendants to enable them to identify the specifics of the fraud claims.

In addition, the defendants can be assumed to have some knowledge about their own advertisements and sales. As stated in *Town of Hooksett*, 617 F.Supp. at 135–36:

> In the instant case, the essential circumstances of the alleged fraud are different in that they do not occur within specific transactions between individuals but rather the misrepresentations were contained within advertisements attesting to the safety of the asbestos products. Those advertisements were promulgated by the Defendant and directed toward potential purchasers such as the Plaintiff. The Defendant is ably situated to know what advertisements were made around the date of the purchase in the instant case. Likewise, the Defendant is in a better position than the Plaintiff to know what medical and scientific tests had been conducted on asbestos products, what safety information was known, and what information was withheld. These are all matters peculiarly within the Defendant's knowledge, and as such the requirement of particularity is somewhat relaxed. *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757 (D.C.Col.1964). In any event to require greater specificity from the Plaintiff would be to require it to plead evidence— something which it is not required to do. *Id.*

Further, as discovery progresses the plaintiff has a continuing obligation to provide the defendants with additional details. Finally, the degree of specificity provided by the proposed amendment ensures that these claims have some substantive merit and are not merely strike suits, especially when viewed against a background of a pattern of concealment and fraud in this industry. *See, e.g.,* United States Dept. of Justice, The Attorney General's Asbestos Liability Report to the Congress, p. 34 (August 1981).

Accordingly, the motions to dismiss Counts V and VI are denied. The plaintiff's motion to amend Count V is granted.

*New Hampshire Consumer Protection Act Claim*

The defendants have moved to dismiss Count VII of the Complaint which recites a claim under the New Hampshire Consumer Protection Act, N.H.R.S.A. 358–A, because it fails to allege any conduct within the scope of the statute. Most persuasively, the defendants argue that N.H.R.S.A. 358–A:3 exempts their conduct here from the prohibitions of the statute.

The New Hampshire Consumer Protection Act makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H.R.S.A. 358–A:2. New Hampshire R.S.A. 358–A:3 exempts certain transactions from the liability imposed by the statute, however. Of relevance here is exemption IV–a:

> The following transactions shall be exempt from the provisions of this chapter:
>
> . . . .
>
> IV–a. Transactions entered into more than two years prior to the complaint; provided, however, that this section shall not ban the introduction of evidence of unfair trade practices and deceptive acts prior to the two-year period in any action under this chapter.

The transactions at issue in this suit occurred no later than 1975, eight years before the complaint was originally filed. The plain wording of the statute, thus, forecloses the plaintiff's recovery on this theory of relief. The plain wording of the provision also forecloses application of the usual rules for tolling of statutes of limitations, *i.e.,* the discovery and fraudulent concealment rules; the provision explicitly "exempts" "transactions" entered into more than two years prior to the complaint. Further, the nature of the Act, applying as

it does to unfair and deceptive acts and practices, is such that the legislature would be aware of problems of discovery and fraudulent concealment and would have worded the statute differently if it sought to have such rules apply to this statute.

Finally, I must reject the plaintiff's argument that it is entitled to have a jury consider whether or not the defendants' conduct constituted an unfair or deceptive trade practice. The City argues that the second sentence of the exemption permits introduction of evidence even if occurring more than two years prior to the date of the Complaint. However, evidence of acts occurring more than two years prior to the date of the Complaint can be introduced *only* if the plaintiff can first avoid the statutory exemption; it can only be introduced as evidence of a pattern of conduct in a suit properly brought under the Act.

Accordingly, the defendants' motions to dismiss Count VII are granted.

### Nuisance and Trespass Claims

On July 18, 1984, the plaintiff's motion to amend its Complaint so as to assert claims of continuing private and public nuisance and of continuing trespass was granted. These claims are respectively found in Counts IX, X, and XI. The defendants have moved to dismiss these counts contending that they do not present viable claims.

The term nuisance is so comprehensive that it has been applied to almost all wrongs interfering with the rights of an individual in person, property, the enjoyment of property or comfort; the term includes everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property. *See* 58 Am.Jur.2d *Nuisances* § 1, 62 (1971). But liability for damage caused by a nuisance turns on whether the defendants were in control over the instrumentality alleged to constitute the nuisance, either through ownership or otherwise. *See Shea v. City of Portsmouth*, 98 N.H. 22, 27, 94 A.2d 902, 906 (1953) ("a nuisance arises from the use of property, either actively or passively, in an unreasonable manner"); *Town of Hooksett School District v. W.R. Grace Co.*, 617 F.Supp. at 133. If the defendants exercised no control over the instrumentality, then a remedy directed against them is of little use.

■ The instrumentality which created the nuisance, in this case, has been in the possession and control of the plaintiff, the City of Manchester, since the time it purchased the products containing asbestos materials. The defendants, after the time of manufacture and sale, no longer had the power to abate the nuisance. Therefore, a basic element of the tort of nuisance is absent, and the plaintiff cannot succeed on this theory of relief.

■ Similarly, with respect to the trespass claim the City seeks to assert, the defendants' ownership and control over the asbestos products ceased after the time of manufacture and sale. Consequently, the plaintiff cannot establish the intentional invasion of the property of another necessary under New Hampshire law to state a trespass claim, *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 54, 289 A.2d 68, 72 (1972), because the plaintiff was the one placing the asbestos products in the schools and other public buildings.

Accordingly, the defendants' motions to dismiss Counts IX, X, and XI of the Complaint, as amended, are granted.

### Motion to Add W.R. Grace & Co. as Party Defendant

The City of Manchester has moved to add W.R. Grace & Co., a foreign corporation with its principal place of business in New York, New York, as an additional party defendant, pursuant to Fed.R.Civ.P. 15 and 21. W.R. Grace & Co. opposes this motion because of "undue delay by the moving party", "undue prejudice to the opposing party", and "futility of the amendment".

I have earlier discussed the standards for evaluating a motion brought pursuant to Rule 15. Rule 21, allowing addition of parties "at any stage of the action and on

such terms as are just," has very similar and interrelated standards. It basically requires me to evaluate whether the motion to amend comes so late in the litigation that it will delay the case and whether the amendment will unduly prejudice any parties to the action. *See* 7 A. Wright and C. Miller, *Federal Practice and Procedure* § 1688 (1972). The primary function of Rule 21 is to avoid multiple litigation and to promote liberal joinder of parties. *See, e.g., Halladay v. Verschoor,* 381 F.2d 100 (8th Cir.1967).

W.R. Grace & Co.'s contentions are basically three: (1) the plaintiff has failed to establish by affidavits, depositions, interrogatories, or documentary evidence that products of its company were or are in any of the City of Manchester's public buildings; (2) the plaintiff has failed to explain its delay in seeking to add W.R. Grace & Co. as a defendant; and (3) W.R. Grace & Co. will be unduly prejudiced because it has had no opportunity to inspect buildings from which asbestos products have been removed, to examine, test, and study the way the material was applied, nor to conduct its own independent bulk sampling inspection and testing or air sampling.

The City of Manchester has since addressed each of W.R. Grace & Co.'s objections. It has filed an affidavit and documentary evidence to the effect that it was not until after this action was commenced that plaintiff's counsel discovered documents and obtained test results indicating that W.R. Grace & Co. supplied some of the asbestos in the buildings of the City of Manchester; the City then promptly made this motion. The plaintiff also represents that it has samples of the extracted asbestos which will be provided to W.R. Grace & Co. so it can conduct its own independent tests, and that W.R. Grace & Co. will have access to the plaintiff's tests.

██ I believe that the plaintiff proceeded in good faith in its delay in seeking to add W.R. Grace & Co. as a party defendant. The motion has not come so late in the course of this suit that it will unreasonably delay the case or prejudice the various parties. In addition, the representations made by the plaintiff as to sampling and testing show that W.R. Grace & Co. will have an adequate opportunity to defend itself in this action. Finally, a just and efficient resolution of this case requires that all parties who may have caused the plaintiff's damages be present in this suit.

Accordingly, the City of Manchester's motion to add W.R. Grace & Co. as an additional party defendant is granted.

In summation, for the reasons set forth above, the motions to dismiss and to amend are disposed of as follows:

—defendants National Gypsum's, U.S. Mineral Products and U.S. Gypsum's motions to dismiss are denied as to Counts I, II, III, IV, V, VI, and VIII, and granted as to Counts VII, IX, X, and XI.

—plaintiff City of Manchester's motion to amend complaint (dated 1/26/84) is granted and defendant National Gypsum's motion to dismiss amended writ of summons is denied.

—plaintiff City of Manchester's motion to add W.R. Grace & Co. is granted.